NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240085-U

NO. 4-24-0085

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 26, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Fulton County |
| RODNEY G. SHAFFER, | ) | No. 24CF4 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas B. Ewing, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Steigmann and Lannerd concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court reversed, finding the circuit court abused its discretion in denying defendant pretrial release.

¶ 2     Defendant, Rodney G. Shaffer, appeals the circuit court's order denying him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52, 223 N.E.3d 1010 (setting the Act's effective date as September 18, 2023).

¶ 3     On appeal, defendant argues the circuit court "erred by detaining [him] because the State failed to show by clear and convincing evidence that [he] posed a present danger and

that no set of conditions could mitigate or lessen and purported danger to a person or the community." We agree and reverse.

¶ 4                                    I. BACKGROUND

¶ 5            On January 12, 2024, by way of information, the State charged defendant with three counts of child pornography (720 ILCS 5/11-20.1(a)(6) (West 2022)), Class 2 felonies. The State simultaneously filed a verified petition to deny defendant pretrial release under section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)). The State alleged defendant was charged with a qualifying sex offense under article 11 of the Criminal Code of 2012 (720 ILCS 5/art. 11 (West 2022)), and defendant's pretrial release posed a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, pursuant to subsection (a)(5). (725 ILCS 5/110-6.1(a)(5) (West 2022)).

¶ 6            That same day, defendant appeared before the circuit court for a probable cause and detention hearing. The court informed defendant of the charges and the possible penalties. To establish probable cause, the State proffered an investigator with the Illinois Attorney General's Office executed a search warrant for defendant's home on January 11, 2024. The State based the search warrant on "a Cybertip *** from Verizon, that they detected child—what was suspected to be child porn being uploaded to their cloud storage by the defendant." Law enforcement seized defendant's cell phone, a Samsung Galaxy 23 with the corresponding serial number. A preliminary search of the phone revealed three pictures, which the State described in detail. The State further proffered defendant told the investigator he downloaded and saved files to his cell phone or would screen shot web pages, referring "to the children depicted in the child pornography files as 'Littles' " and admitting "he masturbated to them in the past." The State

closed its proffer by claiming, "[W]e do anticipate there will be more, many more files." The court found, "Those facts are sufficient for probable cause in this matter."

¶ 7    Before transitioning to the pretrial detention issue, the circuit court inquired as to defendant's finances and appointed the public defender to represent him. The court next asked the State about its verified petition and "if [it] has anything further [it] wants to provide the Court in regard to that petition." The State submitted *People v. Willenborg*, 2023 IL App (5th) 230727, a recent case filed in December 2023, for the court's consideration. It also offered the pretrial report, which assessed defendant's risk factors. Defendant "scored 2 out of 14 on the Revised Virgina Pre-Trial Risk Assessment, which indicates a Low Risk level to not appear at future appointments with the court and to reoffend." The State said it would use these materials during its argument.

¶ 8    Turning to the defense, the circuit court confirmed counsel had an opportunity to confer with defendant, review the police reports, and review the State's filings and offerings. Defense counsel called defendant as a witness. Defendant testified he had lived in Vermont, Illinois, for 20 years. He resided in a home with his wife and adult son. He testified he worked for D&D Enterprises as a truck driver. He described his route, going as far as Springfield, Illinois, to the south, Peoria, Illinois, to the north, Colchester, Illinois, to the west, and the Lewiston, Illinois, area to the east. Defendant testified he could continue working his normal job, should he be released from custody. He said he would comply with any conditions imposed upon his release, including wearing a GPS monitor, not having Internet access, not having a smart phone, reporting to a pretrial probation officer, undergoing a mental health evaluation, and submitting to drug testing. Defendant testified he would do "[w]hatever it takes" to be released.

On cross-examination, defendant acknowledged his wife and son, whom he lives with, have cell phones.

¶ 9        Even though it was the State's petition, defense counsel argued first, contending defendant was "willing to abide by any and all conditions the Court wishes to impose upon him." Defense counsel distinguished *Willenborg*, where the Fifth District had reversed the lower court's decision granting pretrial release, noting that the defendant had been released and allowed to return to his work where he would interact with minors. Counsel noted the State proffered no evidence suggesting defendant would interact with minors at his job or in the public if released.

¶ 10       The State argued Illinois law defines child pornography as a sex offense, although it acknowledged "the elephant in the room" when it said "[c]learly, there's a difference between actual sexual conduct and possession of child pornography." The State reasoned defendant was a danger to the community because, if convicted, he would have to report as a sex offender. The State pivoted to *Willenborg*, arguing it was instructive on how the circuit court should consider a defendant's risk level. There, "the Appellate Court believed that the circuit court abused its discretion by *** allowing the defendant on pretrial release despite having a 0 threat. I think that goes to show the level of consideration that the Court should give to that risk factor." The State speculated it would find more images on defendant's devices.

¶ 11       Citing *Willenborg* again, it argued defendant should not be released to the same conditions where the alleged crime occurred. The State contended any condition, even GPS monitoring or prohibiting Internet access, "will be putting him right back to, as the court states, 'The conditions in which the alleged crimes occurred.' " The State concluded by arguing, "I don't believe that there are any conditions the court could *** reasonably put on the defendant

that he would abide by that would prevent—that would eliminate the risk to the community." Upon questions from the court, the State clarified the risk to the community would be reoffending by again possessing child pornography. The State once more stressed that defendant having to register as a sex offender "alert[s] the community that there is a potential danger, a potential risk to the community."

¶ 12   In rebuttal, defense counsel argued people convicted of these offenses are required to be on mandatory supervised release, where the State imposes conditions limiting their access to the Internet and electronic devices. Counsel reasoned these conditions, therefore, are possible to impose on defendants as conditions for pretrial release. Counsel then noted defendant's wife worked second shift and defendant worked first shift, meaning defendant would not have access to her phone. Counsel reiterated defendant was "willing to abide by any and all conditions the Court wishes to impose, including limiting his ability to anything that accesses the internet, I can't do more than just advise the Court that that's something he said he's willing and able to do."

¶ 13   In giving its decision, the circuit court noted it read *Willenborg* but explained it was distinguishable because this case did not have identifiable victims and defendant would not be working with minors. The court then ruled:

> "[T]hese charges and the allegations and the offenses created by
> the general assembly are really significant as set out and the fact
> that any sentences would be consecutive, and that shows how
> serious the legislature is concerned about this crime. It, it is not
> victimless crime. The victims may never actually be specifically
> identified. I think, though, unless we have something more to show

that there's some condition here that will prevent him, other than just his promise not to access the internet, I don't see a condition that would work for his release at this point. I'll consider reviewing this if—at another time, but I'm gonna grant the State's petition."

In a check-the-box-type written order, the court indicated it made all findings necessary under section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)). For example, the court marked it found, by clear and convincing evidence:

"the proof is evident or presumption great under [section] 110-6.1(e)(1) that the defendant has committed a qualifying offense;

the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case under [section] 110-6.1(e)(2); and

there is no condition or combination of conditions that can mitigate the following (110-6.1(e)(3)) the real and present threat to the safety of any person or persons or the community, based on specific articulable facts of the case, for offenses listed in 725 ILCS 5/110-6.1(a)(1) through (7)."

The court based its findings and the order "upon the nature of the allegations[,] the age of the alleged victims[,] and possible punishments for the defendant, as well as the inability to truly prevent the Defendant from accessing the internet, or monitoring access thereto."

¶ 14        Defendant filed a timely notice of appeal under Illinois Supreme Court Rule 604(h)(2) (eff. Dec. 7, 2023). The notice of appeal is a completed form from the Article VI

Forms Appendix to the Illinois Supreme Court Rules (see Ill. S. Ct. R. 606(d) (eff. Dec. 7, 2023)), by which defendant requests pretrial release with conditions. The form lists several possible grounds for appellate relief and directs appellants to "check all that apply and describe in detail." Defendant checked four grounds for relief and typed sentences on the preprinted lines to support all four of his claims. He attacked the State's evidence, arguing the State did not carry its burden of proving by clear and convincing evidence the required statutory elements (*i.e.*, defendant committed a qualifying offense, he posed a real and present threat to the community, and less restrictive conditions would not mitigate the threat defendant posed). Defendant also argued "the court did err in its decision finding there are no conditions or combination thereof to prevent the defendant from being charged with a subsequent case."

¶ 15   The Office of the State Appellate Defender, defendant's appointed counsel on appeal, filed a Rule 604(h) memorandum expounding upon these arguments and laying out the reasons for reversing the circuit court's order.

¶ 16   This appeal followed.

¶ 17         II. ANALYSIS

¶ 18   The Code creates a presumption "a defendant is entitled to release on personal recognizance on the condition that the defendant attend all required court proceedings and the defendant does not commit any criminal offense, and complies with all terms of pretrial release." 725 ILCS 5/110-2(a) (West 2022). It is the State's burden "to prove by clear and convincing evidence that any condition of release is necessary." 725 ILCS 5/110-2(b) (West 2022).

¶ 19   Before a circuit court can deny pretrial release, the State must prove by clear and convincing evidence (1) "the proof is evident or the presumption great that the defendant has committed an offense listed in subsection (a)"; (2) "the defendant poses a real and present threat

to the safety of any person or persons or the community, based on the specific articulable facts of the case"; and (3) "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community." 725 ILCS 5/110-6.1(e)(1), (2), (3)(i) (West 2022). Here, the State's petition sought to detain defendant based on subsection (a)(5), which means the circuit court could "deny *** defendant pretrial release only if" it found defendant had been charged with an "offense under Article 11 of the Criminal Code of 2012 *and* *** that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." (Emphasis added.) 725 ILCS 5/110-6.1(a)(5) (West 2022).

¶ 20　　　　The determination of whether pretrial release should be granted or denied is reviewed under an abuse-of-discretion standard. See *People v. Jones*, 2023 IL App (4th) 230837, ¶¶ 27, 30. "An abuse of discretion occurs when the circuit court's decision is arbitrary, fanciful or unreasonable or where no reasonable person would agree with the position adopted by the [circuit] court." (Internal quotation marks omitted.) *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9, 143 N.E.3d 833. Under this standard, a reviewing court will not substitute its own judgment for that of the circuit court simply because it would have analyzed the proper factors differently. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11.

¶ 21　　　　On appeal, defendant argues the circuit court abused its discretion "by detaining [him] because the State failed to show by clear and convincing evidence that [he] posed a present danger and that no set of conditions could mitigate or lessen any purported danger to a person or the community." We agree and reverse.

¶ 22    When, as here, the State alleges pretrial release should be denied on the basis the defendant presents a danger to the community, the State carries the burden of proving those allegations. 725 ILCS 5/110-2(c) (West 2022). The State, therefore, must prove by clear and convincing evidence "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," and "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community." 725 ILCS 5/110-6.1(e)(2), (3)(i) (West 2022). Factors a circuit court may consider in determining whether a defendant poses a real and present threat include:

"(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.

(2) The history and characteristics of the defendant including:

(A) Any evidence of the defendant's prior criminal history indicative of violent, abusive or assaultive behavior, or lack of such behavior. ***

(B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the

- 9 -

threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release or other release ***.

(9) Any other factors *** deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." 725 ILCS 5/110-6.1(g) (West 2022).

Any decision under section 110-6.1 of the Code, including the dangerousness determination, "must be individualized, and no single factor or standard may be used exclusively to order detention." 725 ILCS 5/110-6.1(f)(7) (West 2022).

¶ 23        In making its proffer for why defendant posed a real and present threat to the community, the State relied solely upon the first section 110-6.1(g) factor—the nature and circumstances of the charged offense. 725 ILCS 5/110-6.1(g)(1) (West 2022). In its argument, the State noted the charged offense constituted a "sex offense," which would require defendant to register as a sex offender if convicted. The State reasoned this made defendant a "[d]anger to

the community." Yet it cited few specific or articulable facts from this case to support its reasoning, noting merely how the investigator found three pictures "on [defendant's] phone in his cloud where he would be able to access that anywhere." The State's proffer lacked details like when defendant downloaded the images or how often he accessed them on the cloud or if he shared them. By contrast, the State indulged in speculation, saying, "[W]e have defendant with what will most likely end up being multiple pictures of what will be child pornography on various devices." And rather than emphasizing or analyzing more section 110-6.1(g) factors, the State's argument for detention focused on *Willenborg* and its proposition that a low-risk score, like the one here, should not be given much weight when considering offenses like child pornography.

¶ 24        Given the State's argument, it is unsurprising the circuit court likewise focused heavily on the nature of defendant's alleged offenses and largely ignored other section 110-6.1(g) factors when making the dangerousness determination. For example, the court found the child pornography charges "really significant" because "any sentences would be consecutive, and that shows how serious the legislature is concerned about this crime." The court briefly commented on defendant's victims, saying child pornography "is not [a] victimless crime," and "[t]he victims may never actually be specifically identified." The court's written order summarized these findings, again noting "the nature of the allegations[,] the age of the alleged victims[,] and possible punishments for defendant." These statements comprise the court's entire dangerousness analysis. See *People v. Hodge*, 2024 IL App (3d) 230543, ¶ 11 (stating that when determining compliance with the directives of the statute, the circuit court's oral findings may be considered in conjunction with the written order).

¶ 25 Our review of the record strongly suggests the State's proffer and the circuit court's dangerousness analysis omitted any other section 110-6.1(g) factor that would have made the court's decision to detain defendant individualized, like, for example, defendant's history or characteristics, his criminal history, his tendency towards violence or abusive behavior, or his age and physical condition. 725 ILCS 5/110-6.1(g)(2)(A)-(B), (4), (5), (9) (West 2022). For the State, and then in turn the court, it seemed sufficient to detain defendant based on dangerousness simply because defendant was charged with possession of child pornography—a sex offense subject to section 110-6.1(a)(5). 725 ILCS 5/110-6.1(a)(5) (West 2022). To them, the alleged offense alone warranted detention. They reasoned defendant must pose a real and present threat to the community because he would be subject to consecutive sentencing and sex offender registration if convicted. However, such a one-dimensional dangerousness determination, particularly the narrow focus on the nature of the charged offense, fails to comport with section 110-6.1 of the Code, which sets forth a multifactorial approach and is heavily weighted against detention.

¶ 26 Recall, circuit courts are to begin with the presumption that *all* defendants are eligible for pretrial release, no matter the charged offense. 725 ILCS 5/110-6.1(e) (West 2022) ("*All* defendants shall be presumed eligible for pretrial release." (Emphasis added.)); see 725 ILCS 5/110-2(a) (West 2022) ("*All* persons charged with an offense shall be eligible for pretrial release before conviction." (Emphasis added.)). The Code's use of "all" proves significant because it cements the legislature's premise there is no offense so serious or so dangerous to *ipso facto* require detention. Indeed, nowhere does the Code permit a court to conclude a person poses a real and present threat to the community simply because the State charged the person with a detainable offense or even when the proof is evident or the presumption great that the

person committed the alleged offense. We echo the First District's rationale when it considered violent offenses: "If the base allegations that make up the *sine qua non* of a [sex] offense were sufficient on their own to establish [dangerousness], then the legislature would have simply deemed those accused of [sex] offenses ineligible for release." *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18. But it did no such thing. See 725 ILCS 5/110-6.1(a)(5) (West 2022) (requiring the State to allege and then prove clearly and convincingly that a person committed a detainable sex offense and poses a real and present threat to a person, persons, or the community). This is why we recently observed, "the fact that a person is charged with a detainable offense is not enough to order detention, nor is it enough that defendant poses a threat to public safety." *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18; see *Stock*, 2023 IL App (1st) 231753, ¶ 18 ("It must also be noted that, logically, the bare allegations that defendant has committed a violent offense are not sufficient to establish" dangerousness or that no conditions can mitigate the danger.).

¶ 27　　　　These rules undermine the circuit court's decision and rationale here, namely, its determination defendant posed a real and present threat to the community. The court essentially relied upon the nature of the charged offense, saying the possession of child pornography "charges and the allegations and the offenses created by the general assembly are really significant as set out and the fact that any sentences would be consecutive." The court cited no specific articulable facts from the case, besides the age of the victims, which is also part of the nature of the offense, for finding defendant posed a real and present threat to the community. Considering the plain language of section 110-6.1 of the Code and its presumption for granting pretrial release to all persons charged with any offenses, it does not follow that a court can rely solely upon the seriousness of an offense to justify detaining someone. Here, the court

determined defendant posed a real and present threat to the community simply because he had been charged with possessing child pornography. Neither the Code nor the case law permits such a simplistic determination, which renders the circuit court's decision arbitrary and unreasonable. *Simmons*, 2019 IL App (1st) 191253, ¶ 9; contrast with *People v. Inman*, 2023 IL App (4th) 230864, ¶ 17 (holding circuit court did not abuse its discretion because it had "complied with the requirements of the Code"). Accordingly, we hold the court abused its discretion in granting the State's verified petition for pretrial detention. *Jones*, 2023 IL App (4th) 230837, ¶¶ 27, 30; *Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 28    Because we find the circuit court erred in concluding defendant posed a real and present threat to the community and can reverse on that ground alone, we need not address defendant's other argument that the court also erred in finding that no condition or combination of conditions can mitigate the real and present threat defendant poses to the community. Presuming the State still seeks to detain defendant, it will have to prove every element in section 110-6.1(e) again by clear and convincing evidence, including this one. 725 ILCS 5/110-6.1(e)(3) (West 2022).

¶ 29                               III. CONCLUSION

¶ 30    For all these reasons, we reverse the circuit court's judgment and remand for further proceedings.

¶ 31    Reversed.